## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DERRICK BENNING,

                     :

       Petitioner,                    Case No. 1:06-cv-862

                     :       District Judge Susan J. Dlott
    -vs-                       Chief Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,

                     :

       Respondent.

---

## REPORT AND RECOMMENDATIONS

---

Petitioner Derrick Benning brought this habeas corpus action to obtain relief from his conviction and sentence in the Hamilton County Common Pleas Court. He pleads the following grounds for relief:

> **Ground One:** Petitioner was denied effective assistance of counsel on direct appeal as of right, in violation of the Sixth and Fourteenth Amendments.
>
> **Supporting Facts:** Appointed appellate counsel failed to raise significant and obvious issues of constitutional magnitude, including a Batson violation; ineffective trial counsel, prosecutorial misconduct, unconstitutional jury instruction and unlawful sentence; failed to include the denial of the new trial motion in the notice of appeal, and prejudiced the result of the appeal.
>
> **Ground Two:** Petitioner was deprived of his right to a fair and impartial jury and 14th Amendment right to equal protection by deliberate exclusion of Black jurors by the prosecution.
>
> **Supporting Facts:** During the jury selection process, a single African-American person was present in the entire panel of

-1-

prospective jurors (in Hamilton County, Ohio, which has a significant black population).  The prosecutor struck the single black venireperson with a pretextual "race neutral" explanation.  The juror was excused over objection.

**Ground Three:** Petitioner was denied due process of law by the misconduct of the prosecutor.

**Supporting Facts:** During the trial proceedings, the prosecutor misstated the law to the jury, arguing that it had to find the petitioner "guilty or innocent," rather than guilty or not guilty, shifting the burden of proof and misstating the law; argued facts not in evidence, claiming that a 9mm was Petitioner's "weapon of choice" despite no such evidence existing; vouched for the credibility of the sole inculpatory witness, placing the imprimatur of the office behind the witness and erroneously argued "flight" despite an absence of evidence.

**Ground Four:** Petitioner was denied a fair trial by impartial jury and due process of law by unconstitutional jury instructions.

**Supporting Facts:** The trial court instructed the jury repeatedly that it had to find Petitioner "guilty or innocent" rather than "guilty or not guilty," which impermissibly shifts the burden of proof due to the inherent difference between innocence and the absence of proof of guilt beyond a reasonable doubt.

**Ground Five:** Petitioner was denied due process of law and the right to trial by jury where the trial court enhanced his sentence beyond the statutory maximum based upon facts not alleged in the indictment, depriving Petitioner of notice and opportunity to be heard, and the right to a jury verdict on all essential elements.

**Supporting Facts:** The maximum sentence in this case is fifteen years to life, consecutive to a firearm specification.  The trial court, based upon elements not charged in the indictment and without sending the fact finding to the jury, directed a verdict of guilty on the additional elements and enhanced Petitioner's sentence an additional sixteen (16) years.

**Ground Six:** Petitioner was deprived of the effective assistance of counsel at trial, in violation of the Sixth and Fourteenth Amendments.

**Supporting Facts:** Trial counsel, in void [sic] dire, promised the jury

-2-

> he would present the testimony of two witnesses and then failed to do so; introduced Petitioner's prior record to the jury where it would otherwise not have been before the jury; failed to even request in camera inspection of witnesses' prior statements under Crim. R. 16(B)(1)(g) so as to effectively cross examine the witnesses; failed to even request the severance of Petitioner's trial from that of his adversarial co-defendant, where the co-defendant's counsel spent the entire trial blaming Petitioner for everything; failed to request a lesser included offense instruction on manslaughter; misstated the facts to the jury in a manner prejudicial to Petitioner, and failed to raise any objections to the misconduct of the prosecutor, the constitutionally defective "guilt or innocence" jury instructions or the constitutionally defective sentence enhancement.

(Petition, Doc. No. 1, at 6-10, 16).

## Procedural History

Petitioner was indicted with Ryan Lillard and convicted by a Hamilton County jury of one count of murder and three counts of felonious assault with corresponding firearms specifications. He was sentenced to an aggregate term of imprisonment of thirty-nine years to life and appealed to the Ohio First District Court of Appeals asserting two assignments of error, to wit, that his conviction was against the manifest weight of the evidence and the trial court erred in denying his motion for new trial.  The Court of Appeals denied the first assignment on the merits and found it had no jurisdiction to decide the second assignment because Petitioner had filed no notice of appeal from the trial court's denial of the new trial motion.

Petitioner then filed a *pro se* notice of appeal to the Ohio Supreme Court, stating the following as controlling propositions of law:

> **Proposition of Law No. 1:** It is inappropriate to impose the sanction of dismissal against a party when it is counsel who is at fault in

failing to meet a procedural requirement.

**Proposition of Law No. 2:** Where a convicted co-defendant admits his own guilt as well as his actions in setting up the defendant, it is error to refuse to conduct an evidentiary hearing on a properly filed motion for new trial, and to refuse to grant relief.

**Proposition of Law No. 3:** Where appellate counsel makes serious errors and fails to raise significant and obvious issues of constitutional magnitude with reasonable probability of success on appeal in favor of weaker arguments with little or no chance of success, the appellant has been denied the effective assistance of counsel on direct appeal, in violation of the Sixth and Fourteenth Amendments, and Article One, Sections Ten and Sixteen of the Ohio Constitution, requiring reversal.

**Proposition of Law No. 4:** Where a prosecutor in a criminal case uses a peremptory challenge to excuse the sole black venire person based upon a pretextual "race neutral" excuse, the defendant has been denied his Sixth Amendment right to a fair trial by an impartial jury and his Fourteenth Amendment right to equal protection of the law.

**Proposition of Law No. 5:** Where trial counsel falsely promises the jury to present witnesses in voir dire, erroneously brings out the defendant's prior record, fails to request prior statements of state witnesses after their testimony, fails to move to sever the trial from an adversarial co-defendant with mutually exclusive defense strategy, fails to request a lesser included offense instruction when the evidence clearly warrants it, misstates the facts in closing argument, fails to object to prosecutorial misconduct in closing arguments, fails to object to repeated references to defendant's prior record, and fails to object to burden shifting and prejudicial jury instructions, the defendant has been denied the effective assistance of counsel under the state and federal constitutions.

**Proposition of Law No. 6:** Where a prosecutor misstates the law to the jury, argues facts not in evidence, and conducts improper vouching for state witnesses to the jury, the defendant is denied due process of law.

**Proposition of Law No. 7:** There is a clear legal difference between innocence and the absence of guilty (sic.) beyond a reasonable doubt and where a trial court, in jury instructions, repeatedly directs the jury that it has to find the defendant either guilty or innocent, the burden

of proof has been irretrievably altered, denying the defendant due process of law.

**Proposition of Law No. 8:** Where a sentence in a criminal case is enhanced beyond the statutory maximum based upon factual findings not alleged in the indictment, admitted by the defendant, or proven beyond a reasonable doubt and found by the jury, but rather were arbitrarily "found" by the judge, the defendant's Sixth Amendment right has been violated.

(Appellant's Jurisdiction Memorandum, Ex. 17 to Return of Writ Doc. No. 5, at i-ii).  The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question and denied leave to appeal.  (Ex. 18 to Return of Writ)  Petitioner then timely filed his Petition in this Court.

## Analysis

In his first Ground for Relief, Petitioner asserts that he received ineffective assistance of appellate counsel when his appellate attorney failed to include a number of assignments of error in the direct appeal.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988).  Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963);  *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967);  *United States v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).  The right to counsel is limited to the first appeal as of right.

*Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974).

The general governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259 (2000); *Burger v. Kemp,* 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987). The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective."

*McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

Petitioner raised his claim of ineffective assistance of appellate counsel in one of the two ways which Ohio provides for raising that claim: a defendant can raise the claim either on appeal from the intermediate court of appeals to the Ohio Supreme Court or can file an application for reopening in the intermediate appellate court itself. *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992). Petitioner chose the first of these two routes. However, the Ohio Supreme Court's appellate jurisdiction is discretionary and it declined to consider that claim on the merits. Since there is no state court decision on the merits of this claim, it is to be reviewed *de novo* in federal court, i.e., without any deference to the fact that the state courts did not grant relief on this basis.

In his first Ground for Relief, Petitioner claims that his appellate counsel was ineffective for failing to raise the claims he makes in Grounds Two, Three, Four, Five, and Six. Respondent in turn claims that each of those five grounds for relief is barred by Petitioner's procedural default in presenting them to the state courts.

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Mapes v. Coyle,* 171 F. 3rd 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,*785 F.2d*,* at 138.

Grounds Two, Three, Four, Five, and Six were raised for the first time in the state courts as propositions of law on Petitioner's direct appeal to the Ohio Supreme Court. Ohio clearly has a rule that questions cannot be raised in the Ohio Supreme Court which were not first presented and argued in the courts below. Respondent cites for that proposition *State v. Phillips*, 27 Ohio St. 2d 294 (1971), and *State v. Sanders*, 92 Ohio St. 3d 245 (2001)(cited at Answer, Doc. No. 5, at 14-15). To the same effect is ¶ 2 of the syllabus in *State v. Williams,* 51 Ohio St. 2d 112, 364 N.E. 2d 1364 (1977)(*Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), approved and followed.). Although the Ohio Supreme Court did not expressly apply this rule when declining jurisdiction, the Sixth Circuit has instructed us that we should not presume that court ignored its own procedural rules, but rather we should presume it would have enforced the procedural bar. *Simpson v. Sparkman*, 94 F. 3d 199, 203 (6ᵗʰ Cir. 1996).

-10-

Petitioner argues in his Traverse (Doc. No. 6 at 3-5), that *Phillips* is outdated law, superseded by *Murnahan, supra*.  That is to say, he argues that his claims were "fairly presented" to the Ohio courts when they were argued for the first time as propositions of law on direct appeal to the Ohio Supreme Court.  That is simply not what *Murnahan* stands for.  *Murnahan* and Ohio App. R. 26(B) which was adopted to carry out *Murnahan* provide an Ohio procedure for raising claims of ineffective assistance of appellate counsel, not a way to raise new appellate assignments of error for decision on the merits after the Court of Appeals has ruled on the first set of assignments of error which have been raised.  "Neither *Murnahan* nor App. R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals."  *State v. Reddick* 72 Ohio St.3d 88, 90-91, 1995-Ohio-249, 647 N.E.2d 784 (1995).

Because Petitioner procedurally defaulted in presenting Grounds Two through Six to the Ohio courts – by never presenting them until his appeal to the Ohio Supreme Court – he cannot obtain merit consideration of those claims in this Court unless he can show excusing cause and prejudice or excusing actual innocence.  Ineffective assistance of counsel, including appellate counsel, can constitute excusing cause provided the petitioner can show prejudice from appellate counsel's failure to raise a particular assignment of error.  As noted above, that means a petitioner must show that it constituted deficient performance to fail to raise a particular assignment and that that assignment would have changed the result of the appeal.  In effect, then, Petitioner must prevail on his first Ground for Relief in order for this Court to find excusing cause and prejudice to permit it to consider the other five grounds for relief.

**Batson claim:**

Petitioner's first asserted instance of ineffective assistance of appellate counsel is his appellate attorney's failure to make a *Batson* claim. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), prohibits race-based peremptory challenges by a prosecutor. A trial court must use a three-step process to evaluate a *Batson* claim. First, the opponent must make a *prima facie* showing that the proponent of the strike has exercised a peremptory challenge on the basis of race. The burden then shifts to the proponent to articulate a race-neutral reason for the challenge. Finally, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995); *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 1865, 114 L. Ed. 2d 395 (1991). To make a *prima facie* showing, a defendant must show that he is a member of a cognizable racial group, that a challenge has been exercised to remove a venireperson of the same race, and any additional facts and circumstances from which an inference could be drawn that the prosecutor had used the peremptory challenge in a race-based manner. *Batson,* 476 U.S. at 79. The defendant is entitled to rely on the fact that the peremptory challenge process is one in which those who are of a mind to discriminate on the basis of race are able to do so. *Id*. A trial judge's conclusion that the challenge was race-neutral must be upheld unless it is clearly erroneous. *Hernandez*; *supra*; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990). A *Batson* error is never harmless, but rather is a structural error. *United States v. McFerron,* 163 F.3d 952 (6th Cir. 1998), relying on *Arizona v. Fulminante,* 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). A State may not require a prosecutor to meet a more likely than not burden at the prima facie stage. *Johnson v. California,* 545 U.S. 162, 125 S. Ct. 2410; 162 L.

Ed. 2d 129 (2005).

The trial transcript shows that the challenged venireperson was a Ms. Hunter, a registered nurse at Summit Behavioral Center in the long-term chronic care unit where defendants in Hamilton County are sent to be psychologically assessed and restored to competency while awaiting trial. In response to the Batson challenge, the prosecutor said:

> … the reason why I'm doing this, I had a particularly contentious case that I had out at Summit Behavioral Center in which we had those records, and although she's denied she's involved in that, I believe she was involved in that case, and, in fact, she signed off on some things she shouldn't have and there were some problems.
>
> I didn't want, at some point in time, to embarrass her, put her on the hot seat as regards to that, but I don't think she was being totally truthful as regards to her answers about her connection with that case. She, obviously, indicated she did know about the case, she remembered the case, but she said she didn't have anything to do with it, and I think she did. I'm positive she did. That's my recollection.

(Ex. 24 to Answer, Tr. 325; also see *Id.* at Tr. 327 (lines 9-15).) The trial judge found that this was a race-neutral reason for the peremptory challenge and allowed its exercise.

Petitioner asserts that the prosecutor's reason was "clearly pretextual" (Traverse, Doc. No. 6, at 9.). As evidence he cites the fact that the venireperson denied under oath that she had been involved in the case which the prosecutor was talking about and there was no sworn testimony to the contrary. This, however, mistakes the burden of proof on a *Batson* claim; that burden always remains with the defendant to show that the peremptory was intentionally racially discriminatory. *Purkett, supra,* at 768. A prosecutor's statement must be clear, reasonably specific, and related to the particular case. *Id*. The prosecutor cannot prevail merely by denying he intends to discriminate on the basis of race and asking the trial judge to accept his assertion as made in good faith. *Id*. at

769. That is not what happened here. The prosecutor gave a reason – the venireperson's possible bias against the prosecutor arising out of a prior contentious case – which is facially valid and race neutral. The judge accepted that explanation. The trial judge's finding on the question of intentional discrimination is a finding of fact which could have been reversed on appeal only if it had been found to be clearly erroneous. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Agricultural Services Assn., Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1071 (6th Cir. 1977), quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). It is very unlikely that the Court of Appeals would have found this finding to be clearly erroneous. Therefore, it was not ineffective assistance of counsel to fail to raise the *Batson* claim on direct appeal.

**Prosecutorial Misconduct:**

Petitioner's second asserted instance of ineffective assistance of appellate counsel is appellate counsel's failure to seek reversal for prosecutorial misconduct in that the prosecutor allegedly (1) misstated the law to the jury, (2) argued facts not in evidence, (3) vouched for the credibility of the "sole inculpatory witness," and (4) erroneously argued "flight" in the absence of any evidence of flight.

The constitutional standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to

-14-

render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979);

accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*,

449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983).  The court must first decide

whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir.

2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).  A four-factor test is then

applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of

the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or

remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made;

and whether the evidence against the defendant was strong." *Id.*  The court must decide whether the

prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the

competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).  The court must

examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department

of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219

(1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial

misconduct:

> In every case, we consider the degree to which the remarks
> complained of have a tendency to mislead the jury and to prejudice
> the accused; whether they are isolated or extensive; whether they
> were deliberately or accidentally placed before the jury, and the
> strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608).  The misconduct must be so gross as probably to

prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S.

Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).

**Subclaim One: Misstatement of the Law**

Petitioner asserts the prosecutor committed misconduct in telling the jury that they had to determine the guilt or innocence of the defendants. What the prosecutor said at the place referenced by Petitioner was

> Your job is a very important one. Our system of criminal justice in the United States doesn't work without 14 people like yourselves willing to give up your time to serve, I think that word we've heard over and over again, to do your duty, as you sit here in that jury box, to listen to these cases and ultimately to go back there, deliberate among the 12 of you, assuming all of you make it through these next couple of hours in order to determine the guilt or innocence of the defendants in this particular case.

(Return of Writ, Exhibit 28, at Tr. 1166 (lines 13-25).)

First of all, this comment by the prosecutor was not a misstatement of the law. Informing jurors that their task is to determine the guilt or innocence of a defendant is a common way of stating what it is that the jury is to do in a criminal case. That way of putting the matter has been a part of the standard voir dire orientation of many judges for many years without, so far as this judge is aware, its ever having been held to be error; Petitioner points to no decided case law holding this way of speaking to be error. Of course, it is inexact: a jury must either find a defendant guilty of every element beyond a reasonable doubt or find him not guilty. But in the context of a trial where the burden of proof and where it lies has been repeatedly and correctly stated to the jury, it is no "misstatement of the law" to speak as the prosecutor did and was not likely to mislead the jury.

Secondly, no objection was made by trial counsel to this statement and therefore it was not preserved for appeal. Ohio certainly adheres to that rule. *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1969), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998). Therefore raising this claim on appeal would have been a futile act and it

was not ineffective assistance to fail to raise it.

**Subclaim Two: Misstating the Evidence re 9 mm firearm**

Petitioner asserts the prosecutor also misstated the evidence by referring to Petitioner's asserted possession and use of a 9 mm firearm. As Respondent shows in the Return of Writ (Doc. No. 5 at 33-34), there was a great deal of evidence that supported this statement. Furthermore, there was no contemporaneous objection, so it would have been futile to raise it on appeal. No ineffective assistance of appellate counsel was committed in failing to raise this claim.

**Subclaim Three: Vouching for Angelo Buchanan**

Petitioner asserts that the prosecutor improperly vouched for the credibility of witness Angelo Buchanan. The portions of the argument to which he objects are as follows:

> Further evidence, further confirmation of what Alonzo Buchanan had to say to you from that witness stand was the truth about what he saw and what he observed on the night of August 6th, 2003, and the aftermath of that particular evening.
>
> Moreover, Alonzo Buchanan has no reason to come into this courtroom and lie to you, to tell you anything but the truth. * * *

(See Exhibit 28, at Tr. 1200 (lines 6-15) (closing argument).

* * *

> We're misleading you guys? Do you really think we're misleading you?

(See Exhibit 28, at Tr. 1257 (lines 9-10) (rebuttal closing argument).

The first of these comments does amount to improper vouching. See *Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005). However, it is plainly an isolated incident. The second consists of a

-17-

completely proper argument that Buchanan had no motive to lie. The third is not a comment on the credibility of any witness, but a properly argumentative/rhetorical response to the claim by defense counsel that the prosecutor was trying to mislead the jury. None of these comments were objected to by defense counsel. Thus this subclaim would not likely have been successful on appeal and it did not constitute ineffective assistance of appellate counsel to fail to raise it.

**Subclaim Four: Misstatement of the Evidence re Flight**

Petitioner asserts the prosecutor improperly commented on his fleeing the scene of the crime when there was no evidence to support that comment. As noted extensively by Respondent, there was ample evidence from a number of witnesses to support the comment. (Answer, Doc. No. 5, at 38.) There was also no objection made by defense counsel. Therefore it was not ineffective assistance of appellate counsel to fail to raise this claim on appeal.

**Improper Jury Instruction**

Petitioner's third asserted instance of ineffective assistance of appellate counsel is counsel's failure to raise on appeal the following portion of the trial judge's jury instruction:

> You must decide separately the question of guilt or innocence of each of the two defendants. If you cannot agree upon a verdict as to both the defendants, but do agree as to one, you must render a verdict as to the one upon whose guilt or innocence you do agree.

(Return of Writ, Doc. No. 5, Exhibit 28 at Tr. 1283 (line 20) through 1284 (line 1)).

> You may not discuss or consider the subject of punishment. It is you duty to carefully weigh the evidence, to decide all disputed facts, to apply the instructions of the Court to your findings and to render your verdict accordingly. Your duty is confined to the determination of guilt or innocence of the defendant.

-18-

(*Id.* at Tr. 1319 (lines 15-22). In addition to using the language quoted, the trial judge also advised the jury that, in order to convict, they must be persuaded beyond a reasonable doubt of every element in the offenses charged in the indictment.

To show a constitutional violation on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) quoting *Cupp v. Naughten*, 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). The category of infractions that violate fundamental fairness is very narrow. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), citing *Dowling v. United States*, 493 U.S. 342, 352 (1990).

As noted above with respect to the prosecutor's use of the phrase "guilt or innocence," the phrase is inexact. However, Petitioner points to no federal or state case law holding that it is improper because suggesting a shifting of the burden of proof or for any other reason. In addition, here too the trial attorney failed to object. Accordingly, there was no ineffective assistance of appellate counsel in failing to raise this claim on appeal.

***Blakely v. Washington* Violation[1]:**

---

[1]Petitioner does not plead the failure to raise a *Blakely* claim as an instance of ineffective assistance of appellate counsel in his Petition, but argues the issue in his traverse (Doc. No. 6 at 9) as if it had been pleaded as such an instance. For the sake of completeness, the Court will treat the issue as if it had been clearly pleaded. As a *pro se* petitioner, Mr. Benning is entitled to a liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972).

In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004)(handed down June 24, 2004), the Supreme Court held that any fact which increases the sentence beyond a legislatively-mandated guideline, even if within a statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt. Under *Apprendi*, sentencing factors and elements of the crime are indistinguishable. *Id.* Because *Blakely* was handed down several months before Petitioner's conviction and thus before direct appeal, it applies to his case.

Under Ohio law at the time Petitioner was convicted, a defendant had to be sentenced to the minimum within the sentencing range prescribed for an offense and to concurrent sentences unless the judge made certain findings of fact at the time of sentencing. On February 27, 2006, the Ohio Supreme Court in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006), held that *Blakely* rendered this Ohio sentencing scheme unconstitutional and severed the requirements for judicial findings from the statute, leaving trial judges with discretion to sentence anywhere within the sentencing range and to impose consecutive sentences without making the findings which had been prescribed. *Foster* was decided while this case was pending on direct appeal and before the Court of Appeals decided the case. However no objection was made at trial to failure to apply *Blakely* or otherwise to the findings being made by the trial judge. When sentencing occurs after *Blakely*, failure to object to the sentence as violating *Blakely* forfeits that issue on appeal. *State v. Payne,* 114 Ohio St. 3d 502, 2007-Ohio-4642 (2007). Thus it was not ineffective assistance of appellate counsel to fail to raise the claim because it had been forfeited at the trial level.

Even if the claim had been made at the trial level, *Blakely* error is subject to harmless error analysis. *Washington v. Recuenco*, 548 U.S. ___, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). If the

First District Court of Appeals had reversed this conviction under *Foster* and remanded it for re-sentencing, it is very unlikely that the trial judge would have imposed a different sentence in his unconstrained discretion when he had chosen the sentence in the first instance under a constrained discretion sentencing scheme.

**Ineffective Assistance of Trial Counsel:**

Petitioner also asserts his appellate attorney was ineffective for failing to complain on direct appeal of the ineffective assistance he allegedly received from his trial attorney.  The standard for evaluating an ineffective assistance of trial counsel is set forth above and applied below to each of the asserted sub-claims.

**Subclaim One: Failure to produce promises witnesses**:

As Respondent concedes, Petitioner's trial counsel mentioned Shawn Jenkins and Jay Johnson as witnesses the defense intended to call and in fact they were not called.  However, this claim would not likely have prevailed on appeal because there was nothing in the trial record to show why they were not called (unable to locate, testimony changed, etc.) or what they would have testified to if they had been called.  Without those facts, Petitioner could not have shown that failure to call them in any way prejudiced his case.

**Subclaim Two: Introduction of Petitioner's prior criminal record:**

The statements by his trial attorney of which Petitioner complains are as follows:

> As a preliminary, Mr. Benning, on or before August 6th of 2003, owned a 1992 Chevy Riley Sport Camaro, dark green in color. He had purchased that maybe nine, 10 months prior to that date, and it was put in the name of a friend of his by the name of Donte Rogers. The reason that was done was because Mr. Benning at the time had been on probation for a previous criminal offense and he had not

> complied fully with all his terms of probation and, therefore, his probation officer was looking for him, and he didn't want to put the car in his name for fear that it would be a public record and the probation officer would then determine where he was and what he was doing.
> He realized if he was found by the probation officer he would probably be arrested and brought before the Court on a probation violation. That wasn't something he really desired to do at that time.

(Return of Writ, Exhibit 24 at Tr. 453 (line 18) through 454 (line 14)).

The defense theory of why Mr. Benning's green Camaro was seen speeding away from the scene of the crime was that Mr. Benning had been carjacked shortly before that. It was then necessary to try to explain to the jury why Mr. Benning's green Camaro was titled in Donte Rogers' name and why Benning did not report the theft of the car to the police. As weak a theory as this was, it required admitting that Benning was on probation. Doing so was obviously a matter of strategic choice by Benning's counsel and not ineffective assistance of counsel.

**Subclaim Three: Failure to Obtain Witness Statements:**

Petitioner claims his trial attorney was ineffective for not requesting in camera inspection of witness statements for possible use for impeachment. However, he can demonstrate no prejudice from this omission by his trial counsel because there is nothing in the record to show that there were any inconsistencies which would have been useful for cross-examination. Thus any attempt to raise this claim on direct appeal would have run afoul of that omission from the record and would have been unavailing. It was not ineffective assistance of appellate counsel for appellate counsel to fail to accuse trial counsel of ineffectiveness on this point.

**Subclaim Four: Failure to Seek Severance:**

Petitioner asserts his trial attorney was ineffective for failure to seek severance of his trial from that of his co-defendant Ryan Lillard. Petitioner points to nothing in the record which supports

his argument that severance would have been granted.  He and Lillard were indicted together and there is a presumption that co-defendants in those circumstances should be tried together.  Lillard's lawyer did not try to exculpate his client by placing the blame on Benning.  In fact, they had the same trial strategy: to claim that they were not there.  There was no ineffectiveness in failing to seek severance or in failing to pursue that claim on appeal.

**Subclaim Five: Failure to Request a Lesser Included Offense Instruction:**

Petitioner claims his attorney was ineffective for failing to request a lesser included offense instruction on voluntary manslaughter.  He ignores the fact that this would have been inconsistent with his trial strategy – that he wasn't the shooter at all.  He also points to no evidence in the record which would have supported giving such an instruction; he does not suggest to the Court how a drive-by shooting[2] can be voluntary manslaughter.

**Subclaim Six: Misstatement of Facts in Closing Argument:**

In support of this sub-claim, Petitioner misreads his counsel's final argument which did not place a gun in Benning's possession.

**Subclaim Seven: Failure to Object to Prosecutorial Misconduct:**

Petitioner notes that his attorney did not object to any of the conduct of the prosecutor during closing argument which Petitioner now classifies as misconduct.  As noted above, such failure to object does bar raising the claims on direct appeal because of the contemporaneous objection rule.  However, as also noted above, only one of the complained-of instances was actually improper (i.e., commenting on Buchanan's veracity) and that was isolated.  It is also a truism of trial practice that juries dislike the constant interruptions of objecting counsel and that objecting to a comment may

---

[2]This is the characterization of the First District Court of Appeals.

hammer it deeper into the jury's consciousness, so it is often a wise strategic choice to fail to object. Even if they had been misstatements, the prosecutor's comments were sufficiently minor that a reasonably prudent trial attorney might well have declined to object. There is no evidence that these were not strategic choices by trial counsel. Thus it is unlikely the Court of Appeals, which has to view these matters as strategic under Strickland if that is reasonable, would have found ineffective assistance of trial counsel here. Thus it was not ineffective assistance of appellate counsel to fail to raise this subclaim on appeal.

**Subclaim Eight: Failure to object to the "guilt or innocence" instruction:**

This subclaim is without merit for the same reasons given above as to why it was not ineffective assistance of appellate counsel to fail to complain about it on appeal: it did not render the instructions as a whole misleading or unfair.

**Subclaim Nine: Failure to make a *Blakely* objection:**

As noted above, failure to make a *Blakely* objection at trial forfeited that claim on appeal. However, as Respondent notes, Petitioner never made this claim in the state courts and it is therefore procedurally defaulted. Compare Proposition of Law No. 5 in the Ohio Supreme Court, quoted above. Even if it had been raised, Petitioner is unable to demonstrate prejudice because he would very likely have received the same sentence on remand under *Foster*.

**Failure to File a Notice of Appeal from Denial of a New Trial:**

Petitioner's appellate counsel failed to file a notice of appeal from the new judgment of the Common Pleas Court denying the motion for new trial. As noted above, the Court of Appeals found this deprived them of jurisdiction to consider that claim.

This Court agrees that it was deficient performance on the part of appellate counsel not to file a notice of appeal. But this claim fails on the second prong of *Strickland*: Petitioner has not shown any prejudice. To prevail on that claim, Petitioner would have to show that the result of the appeal would likely have been different, to wit, that the Court of Appeals would have reversed the denial of a new trial.

In denying the motion for new trial, Common Pleas Judge Myers carefully laid out the law governing new trial motions (Decision and Entry, Return of Writ, Doc. No. 5, Ex. 12). She noted that under Ohio R. Crim. P. 33, a defendant must prove six elements to prevail. Although elements two through five were conceded, she concluded Petitioner had not shown a strong probability of changing the result or that the evidence was anything other than impeachment or contradiction of prior testimony. *Id*. at 2. She found that Mr. Lillard's affidavit merely contradicted the eyewitness identifications made at trial. She also noted the caution with which courts routinely view post-trial affidavits by co-defendants who are protected by the Double Jeopardy Clause from any additional punishment when they accept all the guilt, as Mr. Lillard did here. *Id*. at 4, citing *United States v. Montilla[3]-Rivera*, 115 F.3d 1060 (1st Cir. 1997).

The standard for review of grant or denial of a new trial in Ohio is whether the trial court abused its discretion. *State v. Pritchard*, 1999 Ohio App. LEXIS 5786 (Ohio App. 1st Dist. 1999). Abuse of discretion requires more than an error of law or of judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St. 3d 217, 219, 450 N.E. 2d 1140 (1983); *State v. Adams*, 62 Ohio St. 2d 151, 157-158, 404 N.E. 2d 144 (1980). Judge Myers carefully and conscientiously applied governing Ohio law to deny the motion for new trial.

---

[3]Spelled "Monteille-Riviera" in the Decision and Entry.

It is therefore very unlikely that the Court of Appeals would have reversed her.  That means it was not prejudicial to fail to file a new notice of appeal from the denial of new trial.

Petitioner has not demonstrated the ineffective assistance of appellate counsel which would entitle him to relief on the first Ground for Relief or which could have been excusing cause and prejudice to permit him to receive merits consideration of his second, third, fourth, fifth, and sixth Grounds for Relief.

**Actual Innocence Claim:**

As another approach, Petitioner claims to be actually innocent, arguing that will excuse his procedural defaults.  He relies on the same evidence he used to support his Motion for New Trial (Traverse, Doc. No. 6, at 7).

In *Murray v. Carrier,* 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), the Supreme Court recognized an exception to the cause and prejudice requirement for a petitioner who could demonstrate actual innocence.  However, actual innocence means factual innocence as compared with legal innocence.  *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). "A prototypical example of actual innocence in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley,* 505 U.S. 333, 112 S. Ct. 2514, 120 L.Ed. 2d 269 (1992). To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner or §2255 movant must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  That is, the petitioner must show that it is more likely than not that no reasonable juror would have found  him guilty beyond a reasonable doubt' in the light of the new evidence he

or she is tendering.  In reaching this conclusion, the habeas court may need to make credibility determinations.  *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995), adopting standard from *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

This Court is completely unpersuaded by Mr. Lillard's Affidavit.  As noted by Judge Myers, Mr. Lillard had been allowed to plead to a lesser offense.  Thus he could not receive additional punishment, being protected by the Double Jeopardy Clause.  Moreover, to explain the presence of another person in the green Camaro, he identified Donte Rogers, who was conveniently dead.  His Affidavit is unsworn[4] and thus does not carry the weight a statement under oath would have.  For the reasons cited by the First Circuit in *Montilla-Rivera*, *supra,* the Court rejects Mr. Benning's actual innocence claim.

---

[4]See Judge Myers' Decision and Entry at 5, n. 2.

**Conclusion**

Petitioner's first ground for relief is without merit.  Because he cannot show ineffective assistance of appellate counsel, he cannot offer it as excusing cause and prejudice for his procedural defaults on his other claims.  Nor has he successfully shown actual innocence.

It is therefore respectfully recommended that the Petition herein be dismissed with prejudice.

December 19, 2007.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).