**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DERRICK BENNING,

: 

Petitioner, Case No. 1:06-cv-862

: District Judge Susan J. Dlott

-vs- Chief Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional Institution,

:

Respondent.

---

**ORDER GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*; REPORT AND RECOMMENDATIONS ON CERTIFICATE OF APPEALABILITY**

---

**Leave to Appeal *in forma pauperis***

This habeas corpus case is before the Court post-judgment on Petitioner Derrick Benning's Motion for Leave to Appeal *in forma pauperis* (Doc. No. 15) and for a Certificate of Appealability (Doc. No. 16).

The Sixth Circuit Court of Appeals requires that all district courts in the Circuit determine, in all cases where the appellant seeks to proceed *in forma pauperis*, whether the appeal is frivolous. *Floyd v. United States Postal Service*, 105 F.3d 274 (6th Cir. 1997).

28 U.S.C. §1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." If the district court denies the

individual leave to proceed in forma pauperis on appeal, the party may file, within thirty days after service of the district court's decision as prescribed for by Fed. R.App. P. 24(a)(4), a motion with the Court of Appeals for leave to proceed as a pauper on appeal. The party's motion must include a copy of the affidavit filed in the district court and the district court's statement as to its reasons for denying pauper status on appeal. See Fed. R.App. P. 24(a)(5). *Callihan v. Schneider,* 178 F.3d 800, 803 (6th Cir. 1999), holding *Floyd v. United States Postal Service*, 105 F.3d 274 (6th Cir. 1997), superseded in part by 1998 amendments to Fed. R.App. P. 24.

The test under §1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue not frivolous. *Coppedge v. United States,* 369 U.S. 438, 445-46, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962). Thus an appellant's good faith subjective motivation for appealing is not relevant, but rather whether, objectively speaking, there is any non-frivolous issue to be litigated on appeal. This test will often be difficult to apply in any conclusive manner at the district court level because only a bare notice of appeal is before the District Court; it will often be unable to evaluate the issues appellant intends to raise on appeal because the appellant has no occasion to reveal those issues in a notice of appeal.

Petitioner's Motion for Leave to Appeal *in forma pauperis* does indeed demonstrate that he is unable to afford the appellate filing fee and the costs usually associated with presenting a case to the Court of Appeals. However, on the issue of what questions he intends to present, he merely states in conclusory fashion that they will be debatable among jurists of reason. Having reviewed the Motion for Certificate of Appealability, however, the Court agrees that the appeal is not objectively frivolous and the Motion for Leave to Appeal *in forma pauperis* is GRANTED.

**Certificate of Appealability**

In his Motion for certificate of Appealability, Petitioner argues seven proposed assignments of error. These will be considered seriatim below.

**Standard for Certificate of Appealability**

A person in custody upon a state conviction seeking to appeal an adverse ruling on a petition for writ of habeas corpus in the district court must obtain a certificate of appealability before proceeding. 28 U.S.C. §2253 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), provides in pertinent part:

> (c)
>
> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

District courts have the power to issue certificates of appealability under the AEDPA in §2254 cases.

*Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063 (6th Cir. 1997); *Hunter v. United States*, 101 F.3d 1565 (11th Cir. 1996)(en banc). Likewise, district courts are to be the initial decisionmakers on certificates of appealability under §2255. *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997)(adopting analysis in *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997). Issuance of blanket grants or denials of certificates of appealability is error, particularly if done before the petitioner requests a certificate. *Porterfield v. Bell,* 258 F.3d 484(6th Cir. 2001); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or because they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). If the district court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485, 120 S. Ct. at 1604, citing *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936)(Brandeis, J., concurring). The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, *Slack v. McDaniel*, 529 U.S.

473 at 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000), quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). The relevant holding in *Slack* is as follows:

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. 473, 478,120 S. Ct. 1595,1600-1601

The standard is higher than the absence of frivolity required to permit an appeal to proceed *in forma pauperis. Id.* at 893.

> Obviously the petitioner need not show that he should prevail on the merits... Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'

*Id.* n.4. *Accord, Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1039-1040, 154 L.Ed.2d 931 (2003). A certificate of appealability is not to be issued pro forma or as a matter of course. *Id*. at 1040. Rather, the district and appellate courts must differentiate between those appeals deserving attention and those which plainly do not. *Id*. A blanket certificate of appealability for all claims is improper, even in a capital case. *Frazier v. Huffman*, 348 F.3d 174 (6th Cir. 2003), *citing Porterfield v. Bell*, 258 F.3d 484 (6th Cir. 2001).

**Proposed Assignment of Error No. I**

Petitioner's Proposed Assignment of Error No. I reads:

> **THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANT'S ISSUES WERE NOT 'FAIRLY PRESENTED TO THE STATE COURT.**

(Application, Doc. No. 16, at 1)

The proposed Assignment of Error misreads the Report and Recommendations (the "Report"): this Court has not held that Appellant's issues were not "fairly presented," but that they were procedurally defaulted by not being raised on direct appeal to the Hamilton County Court of Appeals. (See Report, Doc. No. 8, at 8-11.) The only place the phrase "fairly presented" appears in the Report is in quoting Petitioner's argument in his Traverse that he "fairly presented" the issues (See Report, Doc. No. 8, at 11, citing Traverse, Doc. No. 6, at 3-5.)

The issue of fair presentation to the state courts turns on the question whether a habeas petitioner's federal constitutional questions were presented to the state courts in that guise or whether they were instead presented as state law issues. The claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation. *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin*, 935 F.2d 790 (6th Cir. 1991). For example, merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Franklin v. Rose*, 811 F.2d 322 at 326 (6th Cir. 1987); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to

find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).

This Court does not question that when Petitioner first presented his claims to the Ohio courts – on appeal to the Ohio Supreme Court – he "fairly presented" them as federal constitutional claims. However, that does not prevent the claims from having been procedurally defaulted, which is a different issue. The Report concluded the issues were procedurally defaulted because they were not presented to the intermediate Court of Appeals and Ohio has a firmly enforced procedural rule that the Ohio Supreme Court will not rule on issues which have not been raised in the intermediate court of appeals. (Report, Doc. No. 8, at 10, citing *State v. Phillips,* 27 Ohio St. 2d 294 (1971); *State v. Sanders*, 92 Ohio St. 3d 245 (2001); and ¶ 2 of the syllabus in *State v. Williams,* 51 Ohio St. 2d 112, 364 N.E. 2d 1364(1977)(*Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), approved and followed).

In his Traverse (Doc. No. 6 at 3-5), Petitioner argued that *Phillips* had been superseded by *State v. Murnahan,* 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992). While *Murnahan* is a later decision than *Phillips*, it in no way even discusses the proposition for which *Phillips* is cited, to wit, that the Ohio Supreme Court will not consider issues not first raised in the intermediate court of appeals. At most, *Murnahan* creates one exception to the *Phillips* rule in permitting a criminal defendant to raise in the Ohio Supreme Court the question whether he received ineffective assistance of appellate counsel in the intermediate appellate court. That is what Petitioner properly attempted to do in this case, although the Ohio Supreme Court declined to consider his ineffective assistance of appellate counsel claim.

Indeed, by pleading ineffective assistance of appellate counsel on appeal to the Ohio

Supreme Court, Petitioner preserved his ineffective assistance of appellate counsel claim for consideration on the merits in this Court and the Report dealt with that claim on the merits.

Petitioner asserts that the Ohio Supreme Court in the syllabus in *Murnahan* held that "the underlying grounds omitted from review due to counsel's ineffectiveness, could be raised in the appellate court, or directly to the Ohio Supreme Court." (Motion, Doc. No. 16, at 2-3) The *Murnahan* syllabus reads in its entirety as follows:

> 1. Claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C. 2953.21.
>
> 2. Claims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution. ( In re Petition of Brown [1990], 49 Ohio St.3d 222, 223, 551 N.E.2d 954, 955; Manning v. Alexander [1990], 50 Ohio St.3d 127, 553 N.E.2d 264, followed.)
>
> 3. Where the time period for reconsideration in the court of appeals and direct appeal to the Supreme Court has expired, a delayed claim of ineffective assistance of appellate counsel must first be brought in an application for delayed reconsideration in the court of appeals where the alleged error took place, pursuant to Apar 26 and 14(B), and if delayed reconsideration is denied then the defendant may file for delayed appeal in the Supreme Court, pursuant to Section 8, Rule II of the Rules of Practice of the Supreme Court.

*Id*. Thus nothing in the *Murnahan* syllabus stands for the proposition for which Petitioner has cited it.

When a criminal defendant makes a claim of ineffective assistance of appellate counsel, whether in an intermediate Ohio appellate court or the Ohio Supreme Court, he or she must set forth the assignments which the defendant alleges were omitted because counsel was ineffective. See Ohio R. App. P. 26(B)(2)(c); Ohio S. Ct R. XI § 6. Doing so does not present those underlying

assignments or propositions for decision on the merits. *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Garner v. Mitchell*, 502 F.3d 394, 403 (6th Cir. 2007)[1]; *Bailey v. Nagle*, 172 F.3d 1299, 1309 n. 8 (11th Cir. 1999); and *Levasseur v. Pepe*, 70 F.3d 187, 191-92 (1st Cir. 1995).

Because *White* and *Garner* are recent decisions precisely on point, reasonable jurists would not disagree that Petitioner procedurally defaulted on all claims in his Petition except his claim of ineffective assistance of appellate counsel (Ground One). Therefore he should be denied a certificate of appealability on his Proposed Assignment of Error I.

**Proposed Assignment of Error II**

Petitioner's Proposed Assignment of Error No. II reads:

> **THE DISTRICT COURT'S LEGAL CONCLUSIONS REGARDING THE *BATSON* ERROR IN THIS CASE ARE CONTRARY TO CLEARLY ESTABLISHED U. S. SUPREME COURT LAW.**

(Application, Doc. No. 16, at 3)

The Report did not consider Petitioner's *Batson* claim on the merits, but only decided that it was not so plainly a winning issue on appeal that it was not ineffective assistance of appellate counsel to fail to include it. (Report, Doc. No. 8, at 14,) Here the prosecutor gave a facially neutral reason for excusing the venireperson in question and the trial judge found that the reason was in fact race neutral. Petitioner relies on the holding in *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769,

---

[1]Rehearing en banc has been granted in this case, but on a different issue. *Garner v. Mitchell*, 2008 U.S. App. LEXIS 360 (6th Cir., Jan. 3, 2008).

131 L. Ed. 2d 834 (1995), that a trial judge may not rely on the completely conclusory assertion of a prosecutor that he or she is acting in good faith, but that is not what happened here. All that Petitioner points to to show the prosecutor was racially discriminating is that the prosecutor remembered something about the venireperson's employer's involvement in a prior case differently from what the venireperson remembered. Under those circumstances, the trial judge was under no obligation to accept the venireperson's memory over the prosecutor's, especially when the memory had nothing to do with race. It is therefore highly unlikely that the trial judge would have been overturned on appeal on this issue and it was not ineffective assistance of appellate counsel to fail to raise it. Reasonable jurists would not disagree on this point and Petitioner should be denied a certificate of appealability on it.

Proposed Assignment of Error No. III

Petitioner's third proposed assignment of error reads:

> **THE DISTRICT COURT ERRED IN REFUSING TO APPLY REQUISITE THE "CUMULATIVE EFFECT" STANDARD TO THE VARIOUS INSTANCES OF PROSECUTORIAL MISCONDUCT, INSTEAD VIEWING EACH INSTANCE IN ARTIFICIAL ISOLATION.**

(Application, Doc. No. 16, at 5.)

The claim of prosecutorial misconduct was not decided by this Court on the merits, but was evaluated a claim underlying the claim of ineffective assistance of appellate counsel. The Report spent four pages discussing this claim (Doc. No. 8 at 14-18). Instead of "myriad" instances of prosecutorial misconduct of which Petitioner complains (Application at 5), the Report found only

one of the asserted instances of misconduct constituted improper witness vouching; the other comments were not misconduct at all. It is difficult to believe the Court of Appeals would have "cumulated" one isolated instance of improper vouching into a course of conduct which denied Petitioner a fair trial. It was not ineffective assistance of appellate counsel to fail to raise this claim and no reasonable jurist would disagree. No certificate of appealability should issue on this claim.

**Proposed Assignment of Error No. IV**

Petitioner's fourth proposed assignment of error reads:

> **THE DISTRICT COURT'S DETERMINATION OF TWO ASPECTS OF THE PROSECUTORIAL MISCONDUCT CLAIMS ARE CLEARLY ERRONEOUS AND CONSTITUTE AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE.**

(Application, Doc. No. 16, at 6.)

In this proposed assignment of error, Petitioner claims the Report makes clearly erroneous findings of fact as to the prosecutor's comment about a 9 mm handgun and an assertion that Petitioner fled. *Id*.

The evidence which supported the prosecutor's statement about the 9 mm handgun came from Donte Rogers who testified that he was a friend of Petitioner and knew him to own a 9 mm firearm (Trial Transcript at 538-39.) Alonzo Buchanan also testified that he had known Petitioner from childhood and believed he owned a 9 mm. (Trial Transcript at 624-626). Of course this was relevant since the shell casings recovered from the scene and from the car were 9 mm casings and the bullets recovered from the bodies of the victims were 9 mm bullets.

Petitioner claims that the trial transcript does not contain this testimony. At pp. 538-39 of the trial transcript, the following colloquy appears during the testimony of Donte Rogers:

> Q. Do you know if D.B., Derrick, owns any guns?
>
> A. I seen one gun before.
>
> Q. What kind of gun?
>
> A. 9 mm.

(Exhibit 32 to Return of Writ, Doc. No. 31). At pp. 624-26 of the trial transcript during the Alonzo Buchanan testimony, the following colloquy occurs:

> Q. We talked about Ryan [Lillard] and your knowledge of him with firearms. How about your knowledge of Derrick and having seen him with firearms other than that particular evening?
>
> A. I don't recall seeing him with any gun, period, that day. That day I don't recall. Like earlier that day, I don't recall seeing either one of them with guns.
>
> Q. Okay. I understand that. But prior to that, did you know or do you know of Derrick owning any type of firearm.
>
> A. I think he had a 9.
>
> Q. What's that?
>
> A. I think he had a 9.
>
> Q. A 9?
>
> A. Yes
>
> Q. Like a 9 mm?
>
> A. Yes.

(Exhibit 33 to Return of Writ.) Thus contrary to Petitioner's assertion that "[a] review of the trial

transcripts demonstrates a complete absence of any testimony upon which to base such a statement . . ." (Application at 7), the trial transcript unequivocally supports the prosecutor's statement about Petitioner's owning a 9 mm. Petitioner may believe Rogers and Buchanan were lying, but they certainly gave sworn testimony which supported what the prosecutor claimed in closing.

With respect to flight, the Respondent cites three places in the trial transcript where there was direct testimony about Petitioner's fleeing from the scene at the time of the crime and that Petitioner was arrested in Atlanta, Georgia (Return of Writ, Doc. No 5, at 38-39). Petitioner argues that the trial judge's refusal to give the jury an instruction about inferring guilt from flight is somehow converted to a trial court finding, entitled to a presumption of correctness, that he didn't flee. Petitioner gives no record reference to any such finding. A denial of a jury instruction on inferring guilt from flight is not the legal equivalent of concluding as a matter of law or fact that the flight did not occur.

Finally, Petitioner's trial counsel made no objection to these comments of the prosecutor, which meant that they were waived for appeal under the Ohio contemporaneous objection doctrine. Petitioner faults the Report for not discussing the plain error doctrine, but cites no Ohio law in which it has been found to be reversible plain error for a prosecutor to make any comments such as these, particularly when the recorded testimony supports them.

Reasonable jurists would not disagree that it was not ineffective assistance of appellate counsel to fail to raise this claim on appeal. Therefore, no certificate of appealability should issue.

**Proposed Assignment of Error No. V**

Petitioner's fifth proposed assignment of error reads:

> **THE DISTRICT COURT ERRED IN FINDING THAT REPEATEDLY INSTRUCTING THE JURY TO FIND THE DEFENDANT "GUILTY OR INNOCENT" RATHER THAN "GUILTY OR NOT GUILTY" DID NOT AFFECT THE JURY'S PERCEPTION OF THE BURDEN OF PROOF**

(Application, Doc. No. 16, at 8.)

Petitioner of course misstates what this Court concluded. It found that it was not ineffective assistance of appellate counsel to fail to raise this claim on direct appeal because the Court of Appeals would have been very unlikely to reverse on this claim, particularly since there was no contemporaneous objection.

Had this claim been preserved for merits review in this Court, it would even then not have prevailed because Petitioner points to no clearly established United States Supreme Court law which makes the language used by the prosecutor and the trial court a violation of the Constitution. Petitioner admits this in his Application, but notes that neither Respondent nor the Magistrate Judge has cited any law holding this use of language is proper. *Id*. at 9. Therefore, Petitioner reasons, it is a question of first impression and therefore worthy of review. However, the Court of Appeals could not create new law in this collateral proceeding; a new rule would not be applicable to the instant case. *Teague v. Lane*, 489 U.S. 288 (1989).

No certificate of appealability should be granted on Petitioner's fifth proposed assignment of error.

**Proposed Assignment of Error No. VI**

Petitioner's sixth proposed assignment of error reads:

> **THE DISTRICT COURT ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANT'S UNLAWFUL SENTENCE IS A HARMLESS ERROR.**

(Application, Doc. No. 16, at 10.)

In deciding that it was not ineffective assistance of appellate counsel to fail to raise a *Blakely* claim on direct appeal, the Report offered two alternative analyses. First of all, the Report notes that no *Blakely* objection was made to the sentence in the trial court and the Ohio Supreme Court has held that *Blakely-Foster* errors are subject to the contemporaneous objection rule, to wit, they are waived if not raised in the trial court. (Report, Doc. No. 8, at 20, citing *State v. Payne*, 114Ohio St. 3d 502, 2007-Ohio-4642 (2007)). Petitioner does not propose to appeal on that branch of the analysis.

Instead, he proposes to appeal from the harmless error branch of the analysis. What the Magistrate Judge wrote on this branch is, in its entirety, as follows:

> Even if the claim had been made at the trial level, Blakely error is subject to harmless error analysis. *Washington v. Recuenco*, 548 U.S. ___, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). If the First District Court of Appeals had reversed this conviction under *Foster* and remanded it for resentencing, it is very unlikely that the trial judge would have imposed a different sentence in his unconstrained discretion when he had chosen the sentence in the first instance under a constrained discretion sentencing scheme.

(Report, Doc. No. 8, at 19-20.) Upon considering Petitioner's Application, it is clear this analysis is not well expressed. The appropriate analysis is as follows: if the trial attorney had made the objection required by *Payne*, *supra*, then this *Blakely-Foster* claim would have been preserved for

appeal. In considering it, the Court of Appeals would have had before it the United States Supreme Court decision in *Washington v. Recuenco, supra*, which says that harmless error analysis is available. In all probability, it would have made the calculation that the error was harmless because of the likelihood that, unconstrained by Ohio Revised Code § 2929.14 as it existed before *Foster*, the trial judge would likely have imposed the same sentence she did when she was constrained. Thus the analysis is not that this Court finds harmless error, but that the First District Court of Appeals would likely have found harmless error, even if the error had been preserved for appeal[2].

On the other hand, it is possible the Court of Appeals would have found plain error. This case was pending on direct appeal when *Foster* was decided. Petitioner cites *Villagarcia v. Warden*, 2007 WL 1028528 (S.D. Ohio 2007) and *Emrick v. Wolfe*, 2006 WL 3500005. In *Villagarcia*, Judge Frost was considering a *Blakely* error on the merits; the same is true of Judge Holschuh in *Emrick*. In this case we are considering whether it was ineffective assistance of appellate counsel to fail to raise a *Blakely* claim on direct appeal. If Petitioner had a *Blakely* claim before this Court on the merits, it might well follow Judge Frost's and Judge Holschuh's reasoning that the error was not harmless. But that is not the question before this Court. Rather, we could grant the writ only if we found it was likely that the First District Court of Appeals would have found the error not harmless which has not been shown. However, Petitioner does show that reasonable jurists could disagree on whether a *Blakely-Foster* error was harmless and thus he should be granted a certificate of appealability on his sixth proposed assignment of error.

---

[2]A habeas petitioner who prevails on an ineffective assistance of appellate counsel claim does not get a remand to the state trial court for resentencing, but a new appeal to the state appellate court.

**Proposed Assignment of Error No. VII**

Petitioner's seventh proposed assignment of error reads:

> **THE DISTRICT COURT'S LEGAL CONCLUSIONS REGARDING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE UNREASONABLE.**

(Application, Doc. No. 16, at 12.)

The Report concluded Petitioner was not entitled to relief on his claim that his appellate attorney was ineffective for failure to charge his trial attorney with ineffectiveness for a number of reasons:

1. On the sub-claim of failure to call witnesses, the Court of Appeals could not have found prejudice because nothing in the record showed what those witnesses would have testified to (Report at 22). To put it another way, if this claim had been raised on direct appeal, the Court of Appeals would probably have said that it should be or should have been (depending on whether the time had run) raised in a petition for post-conviction relief under Ohio Revised Code § 2953.21 where evidence of what the witnesses would have said could be presented. Ohio Courts of Appeal do not, indeed cannot, permit supplementation of the record on direct appeal with evidence of what an uncalled witness would have testified to. Because this sub-claim very clearly would not have changed the result on appeal, reasonable jurists would not disagree with this Court's disposition of the sub-claim and no certificate of appealability should be granted on it.

2. On the sub-claim of error in admitting that Petitioner had a prior criminal record, as the Report found, this admission was essential to the defense theory of why the green Camaro,

used in the drive-by shooting, was titled in the name of Donte Rogers. It is very unlikely the Court of Appeals would have found reversible ineffective assistance of trial counsel in this admission, so no certificate of appealability should issue on this sub-claim.

3. The sub-claim of failure to request witness statements for cross-examination fails for the same reason as the first sub-claim, to wit, the record is silent on what those statements show.

4. On the sub-claim of failure to seek a severance, the Report concluded there was nothing to show why such a motion would have been granted if made. In the Application, Petitioner shows nothing as to why reasonable jurists would disagree with this assessment.

5. On the failure to request an instruction on the assertedly lesser included offense of voluntary manslaughter, Petitioner's Application also adds nothing to what was in the Petition and Traverse. How could there be a lesser-included instruction on a drive-by shooting when the defense was mistaken identity? How would a reasonable jurist find that a failure to make this claim on direct appeal was ineffective assistance of appellate counsel?

6. The Report concluded Petitioner had simply misread his counsel's closing argument on this point. In the Application, Petitioner points to nothing in the record which would make this conclusion debatable among reasonable jurists.

7. As to trial counsel's failure to object to what Petitioner labels as "prosecutorial misconduct," Petitioner points to nothing to suggest this was not appropriate trial strategy.

8. As to the failure to object to the "guilt or innocence" instruction, Petitioner again fails to note any appellate law (much less clearly established Supreme Court law) which would suggest this usage is reversible error.

9. Petitioner should be granted a certificate of appealability on the issue of whether or not it

was ineffective assistance of appellate counsel to fail to claim ineffective assistance of trial counsel for failure to raise a *Blakely* claim in the trial court.

10. While the Report found it was ineffective assistance of appellate counsel to fail to file a notice of appeal from denial of the motion for new trial, the Report concluded Petitioner had shown no prejudice because he had not shown it was likely he would have succeeded on that claim. The Application adds nothing to the prior argument and in particular does not show that reasonable jurists would disagree with this conclusion.

**Conclusion**

Petitioner should be granted a certificate of appealability as to his claims that it was ineffective assistance of appellate counsel to fail to raise a *Blakely* claim on direct appeal and failure to claim ineffective assistance of trial counsel for trial counsel's failure to make a *Blakely* claim in the trial court. In all other respects, the Application for Certificate of Appealability should be denied.

February 15, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C),

or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).